**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS** |
| **Plaintiff,** | |
| vs. | |
| BRIAN CICEL MANGUM, | **Case No.  2:07CR30 DAK** |
| **Defendant.** | |

This matter is before the court on Defendant Brian Mangum's Motion to Suppress.   An evidentiary hearing was held on June 25, 2007.   The parties then submitted briefs, and oral argument was held on August 22, 2007.   At the hearings, Mr. Mangum was represented by Jeremy M. Delicino.  The United States was represented by Vernon G. Stejskal.   Having carefully considered the evidence adduced at the evidentiary hearing and the materials submitted by the parties, the court now renders the following Memorandum Decision and Order.[1]

**FINDINGS OF FACT**

On August 9, 2006, Officer George Pregman of the Salt Lake City Police Department, was dispatched to the Maverick convenience store at 1707 South 300 West in Salt Lake City, after police received a call about a suspicious vehicle.   Dispatch advised Officer Pregman that a vehicle was parked in the parking lot and some occupants were acting strange.

---

[1] At the evidentiary hearing, Mr. Mangum withdrew his Miranda issue, and therefore, that issue is not addressed here.

Upon arrival, Officer Pregman observed a red Subaru parked in the parking lot next to the gas pumps, with an occupant in the driver's seat and an occupant in the front passenger seat. There was also a Chevrolet Blazer parked next to the Subaru.  The officer noticed an individual in the passenger seat of the Blazer, and an individual standing at the back of the Subaru.   Officer Pregman parked away from the suspect vehicle and continued to observe the vehicle.[2]  He was in a clearly marked patrol car.   The officer saw the man at the back of the Subaru  carrying a gas can, which he placed in the Blazer and drove away.   Officer Pregman then observed the individual in the driver's seat of the Subaru exit the vehicle and re-enter the vehicle on the passenger side, as the other occupant moved from the passenger seat to the driver's seat by climbing over the console.

Officer Pregman walked from his police vehicle to the Subaru and contacted the occupants from the passenger side of the vehicle.   He was dressed in police uniform and carrying a weapon.   Officer Pregman advised the occupants that he had responded to a suspicious vehicle complaint and that they were the reason for the complaint.  Officer Pregman observed that the male occupant of the passenger's seat was shaking and appeared to be really nervous.  Officer Pregman also saw pill bottles in the center console of the car.   He noted that the bottles did not have labels on them, and they contained a large number of red pills.

_____

[2]  Contradicting Officer Pregman's testimony, Mr. Mangum testified that he and the passenger, Cori Allred, were starting to leave the gas station when Officer Pregman pulled in front of them and stopped the car.  In other words, he testified that the officer was parked in such a manner as to make it impossible for them to exit the parking lot.  The court finds the Officer's testimony more credible and therefore finds that Officer Pregman did not park in such a way as to block the suspect vehicle from exiting the parking lot.

When Officer Pregman asked the occupants why they had changed seats, the passenger

seat occupant at first denied that they had changed seats.   Then, when asked why he was shaking

so badly, the passenger indicated that he had Attention Deficit Disorder, but he couldn't elaborate

as to why he was shaking or his medical condition.   Officer Pregman requested that the

occupants provide their driver's licenses.  The female then occupying the driver's seat, Ms. Cori

Allred, provided her license to the officer.  The passenger seat occupant stated that his license

had been stolen and that his name was Brian Mangum.

Officer Pregman returned to the patrol vehicle and conducted a criminal record check

on both individuals.  He was advised that there was an outstanding warrant for Mr. Mangum's

arrest.   Officer Pregman returned to the Subaru and directed the occupants to exit the vehicle.

As soon as a back-up officer arrived, the Mr. Mangum was formally arrested.   As Mr. Mangum

was moving from a sitting to standing position, a crack pipe fell onto the ground.   The vehicle

was searched and pseudoephedrine, iodine and a syringe were seized.

## CONCLUSIONS OF LAW

1.    **OFFICER PREGMAN'S INITIAL ENCOUNTER WITH MR.  MANGUM WAS A CONSENSUAL ENCOUNTER, WHICH DOES NOT IMPLICATE THE FOURTH AMENDMENT.**

When Officer Pregman initially approached Mr. Mangum's car, the exchange between

them was a consensual encounter and did not implicate the Fourth Amendment.  A consensual

encounter is not a seizure for purposes of the Fourth Amendment.  *United States v. Gigley,* 213

F.3d 509, 514 (10th Cir. 2000).   Consensual encounters are voluntary exchanges between the

police and individuals in which the police can ask non-coercive questions.  *United States v.*

*West,* 219 F.3d 1171, 1176 (10th Cir. 2000).   A seizure occurs when an officer, by means of

physical force or show of authority, in some way restrains the liberty of an individual.  *United*

*States v. Zapata,* 997 F.2d 751, 756 (10th Cir. 1993) (citing *Florida v. Bostick,* 501 U.S. 429, 434

(1991)).  "[I]n order to determine whether a particular encounter constitutes a seizure, a court

must consider all the circumstances surrounding the encounter to determine whether the police

conduct would have communicated to a reasonable person that the person was not free to decline

the officers' request or otherwise terminate the encounter."  *Bostick*, 501 U.S. at 439.   Thus,

courts should look to "'the coercive effect of police conduct, taken as a whole' on a reasonable

person." *United States v. Little*, 18 F.3d 1499, 1504 (10th Cir. 1994) (en banc) (quoting *Michigan*

*v. Chesternut*, 486 U.S. 567, 573-574 (1988)).

       The Tenth Circuit has considered such factors as the number of officers present, whether

the event occurs in a public place, whether other members of the public can see the encounter,

whether the officers are in uniform, whether the officer touches the individual, or whether the

officer's language or tone of voice indicates that compliance is required.  *See*, *e.g.*, *United States*

*v. Sanchez*, 89 F.3d 715, 718 (10th Cir. 1996); *Zapata*, 997 F.2d at 756-757.   Thus, there must

be an objective rationale to believe that the encounter is non-consensual.  *United States v.*

*Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996).   No one factor, however, is dispositive. *United*

*States v. Abdenbi*, 361 F.3d 1282, 1291 (10th Cir. 2004).

       When Officer Pregman approached Mr. Mangum's car, he did nothing to indicate that the

encounter was anything but voluntary.  He simply approached a parked car, told them that he was

responding to a call about a suspicious vehicle, and asked the occupants a few questions.   It is

well-established that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434.   The questions about why somebody is shaking and why they switched seats are non-coercive in nature.   The encounter took place in a public place in potential view of other members of the public who might come to get gas or shop in the convenience store.   Officer Pregman did not touch Mr. Mangum or use an aggressive tone of voice.   These factors weigh heavily toward the conclusion that the initial encounter was consensual.

**2.     THE POLICE SEARCH OF MR. MANGUM'S CAR WAS INCIDENT TO ARREST.**

When the police officers searched Mr. Mangum's vehicle, they did so lawfully because the search was incident to an arrest.   "[I]f the police arrest the occupant of a car they may also search the passenger compartment of the vehicle."   *United States v. Edwards*, 242 F.3d 928, 937 (10th Cir. 2001).   It is well-established law that when a suspect is arrested while in the car, the police may search the passenger compartment of the car incident to arrest.   *See New York v. Belton*, 453 U.S. 454, 460 (1981).   It does not matter whether the police arrest the suspect before or after the search "as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search."   *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998)(citations omitted).   The search is valid as long as it is not remote in time or place from the arrest.   *See United States v. Dennison*, 410 F.3d 1203, 1209 (10th Cir. 2005).

When Officer Pregman arrived on the scene, Mr. Mangum was seated in the driver's seat of the car,  and Ms. Allred was seated in the passenger seat.  Mr. Mangum then switched seats with Ms. Allred shortly before Officer Pregman approached the car.  When Officer Pregman

discovered that there was an outstanding warrant for Mr. Mangum's arrest, Officer Pregman

ordered them out of the car and secured them.   As soon as Officer Williamson arrived, he began

his search of the vehicle.   Because the search was conducted shortly after the arrest and while

Mr. Mangum was still in close proximity to the car, the search was valid as incident to arrest.

**3.     THE POLICE'S SEARCH OF MR. MANGUM'S VEHICLE WAS SUPPORTED BY PROBABLE CAUSE.**

Even if the search had not been conducted pursuant to Mr. Mangum's arrest, it would be

valid because the officers had probable cause to search the car.   When "officers have probable

cause to believe that an automobile contains contraband, the Fourth Amendment does not require

them to obtain a warrant prior to searching the car and seizing the contraband." *United States v.*

*Mercado*, 307 F.3d 1226, 1228 (10th Cir. 2002) (quoting *Florida v. White*, 526 U.S. 559, 563-

564 (1999)).   "[P]robable cause exists where attending circumstances 'would lead a prudent

person to believe there is a fair probability that contraband or evidence of a crime will be found

in a particular place.'" *United States v. Cantu*, 405 F.3d 1173, 1176 (10th Cir. 2005) (quoting

*United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001)).

Police officers may conduct warrantless searches of vehicles, as long as probable cause

supports the search.   In *Mercado*, the Court of Appeals explained this well-established exception

to the warrant requirement. The Court stated that the "rationale for the automobile exception is

based on both the inherent mobility of cars (as it is often impracticable to obtain a warrant before

a car can be driven away) and the fact that there is a reduced expectation of privacy with motor

vehicles." *Mercado*, 307 F.3d at 1228 (citing *California v. Carney*, 471 U.S. 386, 390-393

(1985)).

"[P]robable cause exists where attending circumstances 'would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Cantu*, 405 F.3d at 1176 (quoting *Basham*, 268 F.3d at 1203).   Probable cause requires "more than mere suspicion but less evidence than is necessary to convict." *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000).   A probable cause determination is a "'commonsense, practical question' to be informed by the totality of the circumstances present in any particular case." *United States v. Mathis*, 357 F.3d 1200, 1204 (10th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).   Officer Pregman noticed several suspicious circumstances that led him to believe that Mr. Mangum had committed a crime.  Mr. Mangum had exhibited withdrawal symptoms in Officer Pregman's presence.  Mr. Mangum had lied to him about switching seats.   Officer Pregman also noticed several unlabeled prescription-type bottles of drugs in plain view.   The observations established probable cause to believe evidence of a crime would be found in the vehicle.

## CONCLUSION

For the foregoing reasons, Defendant Brian Mangum's Motion to Suppress [docket # 14] is DENIED.

DATED this 20th day of September, 2007.

BY THE COURT:

DALE A. KIMBALL
United States District Judge